Good morning, Your Honors. May we introduce the Court. My name is Jehan Thomas, and I represent Petitioner Homophone Sitorus. With respect to the 06 petition, we are asking this Court to reverse the adverse credibility finding as a result of some inconsistency that were either minor, immaterial, and didn't go to the heart of the claim, or were based on the Immigration Judge's speculation and misconstruction of the record. The Immigration Judge found discrepancy between the statement and the testimony with respect to the duration of the May 1998 riots. He said that the statement indicated that the riots occurred for one month, versus Petitioner's testimony where it indicated it occurred for 10 days. A careful review of the record at page 101, the Immigration Judge asked Petitioner, did the riots go in for 10 days? Petitioner responded, all the way for a month. Therefore, Petitioner testified inconsistent with his declaration, and the Immigration Judge's findings is in error and not supported by the record. The Immigration Judge also found that the Petitioner testified that all the cars were attacked, and when he was questioned in detail, he came up with the idea that the car was attacked because his wife was Chinese. However, a careful review of the record again indicates that at Administrative Record page 102, Petitioner testified, when they saw a Chinese face in the car, my wife, they attacked us and broke the windows. At a further testimony by his counsel, he again reiterates and said, we were coming out of a Chinese area called Tamang, and they saw my wife Chinese, and they attacked us. So the Immigration Judge finding that he came up with the idea that he was attacked because the wife is Chinese, is not supported by the record again. Well, as I understood the record, however, the testimony that he gave really was that the car was attacked during the riots because all the cars were being attacked. That's what he said in his testimony. But initially, this is at page 105 or 106, but if this quote looks at page 102 when he was asked what happened, he said, the people saw my wife, a Chinese face inside the car before any questioning, explaining that the reason they were attacked is because the rioters identified the Chinese face of his wife. At page 102, when asked again with his counsel, why were you attacked? He said, we were coming out of a Chinese neighborhood. They hate the Chinese, and my wife is Chinese. So you're suggesting that the record itself does not support what the IJ suggested? That is correct, Your Honor. I guess you understand that we're really going on a substantial evidence standard, correct? That is correct, Your Honor, and that's why I'm saying that all the way petitioner has testified that his wife is Chinese and they were attacked because they were able to identify her Chinese features. Would you agree that this really is an issue if, in fact, the IJ is making a determination that goes to the heart of the issue? Now, we're not really talking about dates here. We're talking about substantial evidence that goes to the heart of the issue, correct? That is correct, Your Honor, and based on the evidence, the petitioner's testimony is consistent and credible, and all the way through from page 102 through 106, he reiterates that the reason they were attacked is because they identified that the wife has visible Chinese features. So his testimony is consistent with his statement, and the fact that the immigration judge, that he came up with that idea, is not consistent, not supported by the record. Let me ask you a second point. The second point that I thought went to the heart of the matter was that in his testimony, he said that he tried to leave town when the riots began but couldn't, so he went home. When I read the affidavit, there was nothing about that in there. That is correct. Now, that also goes to the heart of the matter, doesn't it? Yes, Your Honor, but the heart of the claim was the attack that happened on him and his family, the burning of his store, the attack on his livelihood, the attack on themselves in the car. The fact whether he went home after the riots or prior to the riots, that doesn't go to the heart of the claim. That's incidental. I mean, this court in San Giganzales, you know, in 1906 when they said who paid the bride to release the petitioner, it wasn't the issue. The issue was whether he was arrested, he was detained, and he suffered harm. Well, my worry is that if in fact one is suggesting that where he is living is such a bad place for him to live, that he must get out of the country, which is the heart of the matter. If one suggests in his testimony that he tries to leave when the riots began, which are the reason he needs to leave, but he couldn't get out, and so that's why he didn't get out, because he couldn't, and so he went home. And then when he goes to his affidavit and he doesn't say anything about that, it seems to go to the heart. Your Honor, at least he doesn't provide anything inconsistent in the statement. The statement doesn't imply whether he went home or he didn't go home, versus the testimony where he provided that he added additional information as to what happened and how he was able to escape or not escape. And this precedent, for example, in Singh v. Gonzalez, another one, and Singh v. Ashraf and Bhandari v. INS has held that information that is more than what a declaration indicated does not support an adverse credibility finding. So this is our position at this point. With respect to the date of the May 1998 riot, again, the immigration judge found discrepancy with regard to that. He said the statement indicated that the riots occurred on May 12, versus his testimony that says May 13. Again, a careful review of the statement at page 188, he said demonstration by student commands on May 12, and then the situation escalated and turns into a riot and it worsened by May 13. So the fact that he testified that the riots occurred May 13 is completely consistent with the statement and the immigration judge's finding of inconsistency is not supported by the record. Let me just ask a question. Assuming we agree with you on the adverse credibility finding, with respect to your asylum claim, haven't you waived it because you have not challenged his determination that it was time-borne? That is correct, Your Honor. We believe that there was no exception under the statute that would have qualified him for that, and we're asking for withholding and cap. So you're just asking, you're just talking about withholding and your cap claim? That is correct. All right. Okay, Your Honor. So, again, I'm going to go back again with respect to the discrepancy in totality. It doesn't in any way enhance the claim of persecution. Again, this Court precedent in Singh v. Ashcroft have held any discrepancy that are not in attempts to enhance the claims of persecution generally have no bearing on credibility. And if, in fact, petition of credibility was questioned here, the wife was available and sequestered out of the courtroom at administrative record page 96. They offered her testimony to corroborate his events because she was a percipient witness at administrative record page 117. However, the immigration judge didn't allow her to testify. This Court precedent in Kaul v. Ashcroft, Lopez, Almanzor v. Gonzalez have held that this credibility finding must be overturned when a witness was available to corroborate the testimony of petitioner and the IG refused to allow such testimony. Also, Your Honor, this Court precedent have held if there is a discrepancy, the immigration judge must confront petitioner and allow him an opportunity to explain and clarify. This never happened in this case. This Court precedent also in Singh v. Ashcroft, Montsevique, 2004, has held that the immigration judge's adverse credibility finding must be overturned if he has not confronted petitioner with the issue. You would agree with me, wouldn't you, that if one of the grounds that the IG suggested is supported by substantial evidence and goes to the heart of the claim, then I have to affirm the IG, correct? It is substantial, but we do believe that substantial evidence do not support the immigration judge finding. Oh, I understand your argument. I'm just making sure that you understand any one of the grounds the IG set out, as long as it's supported by substantial evidence and goes to the heart, then you lose, correct? That is correct, Your Honor. Well, except your other grounds are separate, whatever their merits. I mean, the argument that you didn't have a witness who should have been allowed to testify, that's entirely separate from the issue of whether you would overturn it on one ground and the issue of not confronting the witness with the inconsistency in permitting an explanation. That is correct. Those are two separate areas, grounds that would override the finding of substantial inconsistency. Yeah, I'm raising all issues here before this honorable court. I'm raising the issue that all the adverse credibility is not supported by substantial evidence, and I'm pointing out to the record where the petitioner testified consistent with his declaration, and the immigration judge has misread the record. Okay, all right. I think we get your position. Thank you. Your time has expired. Okay. May it please the Court, Rebecca Hoffberg on behalf of the United States Attorney General. As a quick preliminary matter, there are two petitions for review under review today in this matter, and I'm going to get to both of them. I also want to draw this Court's attention to the fact that because there are two petitions for review, there are two records. She's been citing pages from the record that was submitted for the first petition for review because that was the one she briefed for the adverse credibility finding. The government's brief, however, consolidated the two petitions for review, and the government's brief cites the latter record that was filed for the second petition for review. So I apologize for any confusion in the page numbers. I'm just going to quickly tell you she's been often citing the page 101. By she, you mean opposing counsel? Yes, opposing counsel has been citing to page 101, while the government, for example, 101 is 165 in the government's brief, just as a baseline. 101 equals 165. And as far as the other set of pages, she mentioned 117, where the wife wasn't able to testify. That's page 181 in the government's brief. And as far as the wife not being able to testify, that was not really properly raised to the immigration judge, and I'm going to get to that in a minute. But they stipulated that the wife would testify as the petitioner did, and there was no issue raised at the actual hearing about whether she could or could not testify. I'd like to address the adverse credibility finding first. You have to look at the sheer number of inconsistencies, and combined with omissions and inconsistencies. The sheer number of inconsistencies might make you question the IJ's rationality. Some of them seem to be so inappropriate as inconsistencies. If anything, it raises a doubt as to the IJ's reasoning in general. Your Honor, there are some that are a little bit more technical than others. I think judge – I thought you said tacky when you said technical. Well, more about dates, you know, dates and places and numbers, those types of things that can be a little bit more tedious, however – They're not tedious. I mean, they're a little bit ridiculous. Whether the riot lasts 11 days or 10 days – Well, it was 10 days versus a month. The 10th or the 9th. That hardly shows that you doubt the credibility of an individual. Nobody doubts it with the riots, whether they started on the 10th or the 11th. Why does that make someone ineligible for relief? Well, because there were some that went to the heart of the claim as judge – Well, maybe we could say some of them, but you just said the sheer number of them. The sheer number of them include a number that shouldn't have been in there under any circumstances. Well, I think it was worth noting these inconsistencies, all of them, because in judging – Well, if you want to go through the IJ's report and note the things that are wrong with that and add them up, some of the sentences are unintelligible. Well, Your Honor – And he didn't have a language problem. Well, the thing is that the IJ did recognize several that were to the heart of the claim, even if you want to discount the others. Okay, I don't object to that. We should discuss those. Right. But not say the sheer number of them would lead you to some conclusion. The sheer number of them might lead you to the opposite conclusion. Well, but it's not whether you could reach the opposite conclusion. As Judge Smith pointed out, it's whether you're compelled to reach the opposite conclusion. But why don't you talk about the ones that are serious and significant and not tell us to look at all those others and add them up? Yes, Your Honor. So, for example, on page 166 – again, that would be page 102 of Petitioner's brief – testified he got in the car, tried to leave, but had to turn around and go home for three days. His written statement on page 252, which would be page 188 in her record, says that he had to reverse and detour several times and he could not go home. Okay? That was trying to escape from these riots. That is a critical – Did he say he could not go home? Yes. On page 252, he says, That was a frightening experience for my family and me. We could not go home. And the sentence continues, Because the scene was no better in the neighborhood where we lived. Okay? So that's a clear inconsistency. It goes directly to the heart of the claim. Another one is that, for example, on page 168, he testified he stayed at home and his children did not go to school. His written statement, page 252, implies he was not at home. The children could not go to school. They could not, not that they did not. Wait a minute. You really think there's a difference between they couldn't and didn't? Well, it was the way – They didn't because they couldn't. Okay. I mean, what is that inconsistency? It makes it seem, for example, whether it was a choice, whether they were being forced under those circumstances, the oppressive nature of the situation. You really think that you should disbelieve somebody who says that the children didn't go home at another time, didn't go to school at another time, that they couldn't go to school, that that's a kind of inconsistency that should bar asylum or withholding? Well, it directly relates to whether he was able to be at home or not, which is – I mean, if he was able to be at home, they could go to school. If he wasn't able to be at home, it seems like they wouldn't be able to go to school. That is a direct inconsistency. But what I'd like to direct this Court's attention to is the fact that the Board came to its conclusion about this adverse credibility finding because of the lack of the argument before it from the IJ's adverse credibility finding. And I'd really like to spend some time addressing that part of the second petition for review because you're having problems with this adverse credibility finding. Obviously, we've stated our point that we think that there are at least some grounds that go to the heart of the claim. However, to the extent that this Court finds that the adverse credibility finding is maybe not compelling enough, the fact is you have to realize what the Board had before it when it was upholding the adverse credibility finding, which was a complete lack of all of the arguments that Your Honor is making right now in terms of was this a minor one, was this one a minor one, did this one go to the heart of the claim. The Board wasn't given any of those arguments because, as Petitioner has alleged, ineffective assistance of counsel. And you have to understand that it was his burden to show to the Board why the adverse credibility finding was flawed. The exact arguments that Your Honor is making right now were not presented to the Board. Now, I think it's worth looking at that ineffective assistance of counsel claim  or perhaps the Board could have addressed the adverse credibility finding in that matter. Getting on to that ineffective assistance of counsel claim, it was denied for lack of due diligence in this case. And that is because when the Board reissued its decision on August 25, 2006, the motion to reopen for ineffective assistance was not filed until February 5, 2007. Now, that is a significant amount of time later after the Board reissued its decision. Now, what's clear when the Board reissued its decision that opposing counsel had before her is that the Board said we're not persuaded by the conclusory arguments advanced in his unbriefed appeal. Now, this was, of course, dealing with the adverse credibility finding. It was not briefed to the Board. It was not fleshed out. All of the ideas about inconsistencies, are they minor, are they not, that was not fleshed out to the Board and the Board recognized it as such in its decision. And it found that it was not persuaded by these conclusory statements. They weren't supported by case law and specific references to the testimony and the text. Now, opposing counsel knew that from the Board's decision. And this is very key because part of her claim is that she needed apparently to wait. I mean, she claims at one point she needed to wait until the petitioner got out of detention. That has nothing to do with whether or not she was able to review that Board's decision. You didn't need to wait for anything. Once you saw that the Board said we're denying this because we see conclusory arguments and we're not persuaded by them, there's no reason to wait for anything else. So you're pretty clearly saying there was ineffective assistance of counsel, but it's barred by the second counsel's failure to file timely. Well, that's obviously our alternative argument. We're arguing both petitions for review before this Court today. We believe that there are inconsistencies that go to the heart of the claim and you could dispose of it on that matter. To the extent that you find that that wasn't persuasive enough, it wasn't argued before the Board and that was due to ineffective assistance of counsel. However, the only thing that I would say to you now, I took through all of these inconsistencies or supposed inconsistencies of the IJ and I looked through them and, frankly, what day a riot started or what day it didn't, how many students died or how many didn't and when he was attacked and when he wasn't and how many days he was attacked and all that didn't seem like that big a deal to me. I'm with my colleague on there. But I went right to the two which might go to the heart. And my worry about the two that didn't go to the heart is, as I read the record, I understand that the petitioner must be confronted with adverse statements or inconsistent statements and given a chance to explain. I didn't find any chance to explain these inconsistencies.  But because all the cars were being attacked, there wasn't any chance for him to explain the difference between that and the car was attacked because they saw the Chinese faces in it. Well, if they didn't get any chance to explain, I can't find an inconsistency under the rules. And the one tried to leave town when the riots began but couldn't go, so went home versus he didn't say anything about it or where he went to the riot during, changed, but didn't know what. I mean, he wasn't given a chance to explain. And that seems to me to be the motivating problem that I find in reviewing the transcript is that nobody said, here's an inconsistency, tell us why. Now, what do I do with that? Well, our position is that if you find that if he was given ineffective assistance of counsel That's not my question. It has nothing to do with ineffective assistance. I'm not on the second issue. I'm on the first, which is that the record does not compel reversal. In my book, if he didn't get a chance to explain, the record compels reversal. Well, he was asked some of these questions several times, Your Honor, in terms of being able to try to get out his testimony. If you look at the transcript, I could not find the place where he was confronted. And the ones that I felt went to the very heart of the issue. In that instance, if that's true, and the record as I present to you is true, I have to reverse, don't I, on the issue of whether there is really credibility or not? Well, if you find that substantial evidence supports that, our position is that he was given adequate opportunities by the nature of the questions being asked to give his full testimony. So the fact that they asked the same question three or four times, that's as good as saying, here's one thing you've said one time, and here's one thing you've said another time. Explain the inconsistency, which is what I understand they need to do. And if that's true, they could have raised that to the board. It's failure to exhaust. This court cannot reach an issue that was not raised to the board. Well, failure to exhaust before the BIA is a very difficult question for you to establish some treadmill on that. All they've got to do is barely mention it, and they've exhausted it. I mean, all they've got to do is mention it, and frankly, I'm not sure that based on our case law, mentioning it in general, vague, grand generalities isn't enough to have exhausted it. Yes, it wasn't mentioned at all, Your Honor. This is the notice of appeal that's on page 124. And this was, again, that's why I was bringing up the ineffective assistance of counsel claim, because this is exactly why you almost have to reach the ineffective assistance of counsel claim, because it was not raised at all in the notice of appeal. The arguments you're making about was he able to explain, was he given the opportunity to explain, that needed to be argued to the board. So you're saying, as I understand your argument, that in the notice of appeal to the board or in the argument to the board, that the general topic of credibility was not raised. Well, what they raised about the credibility was what we were talking about earlier. Their dates were minor. These are only minor inconsistencies. You look at this notice of appeal. Never does it say he was not given the opportunity to explain. This is the argument, not even generally, not even in a one-sentence general statement. And so even if you interpret the exhaustion requirement very broadly, it's not here. It's not here at all. And that's why I encourage this Court to reach the ineffective assistance of counsel claim, because it needed to have been raised to the board to satisfy exhaustion jurisdictional requirements, and then the board could have evaluated the adverse credibility finding under the lens that this Court is suggesting. Was he given that chance? What the board had was conclusory statements. And what counsel could have easily recognized when she wrote the letter to prior counsel and she received a statement back from him saying that, you know, under the circumstances, the appeal itself was optional, and according to the petitioner himself, when he requested the appeal to be filed, he said it was, quote, to buy me more time before I'm ready to go back to Indonesia. And this is on page 58 of the government's record. So what any reasonable person would have interpreted from that was that this notice was filed as a way to buy time, and whether that was true or not, that's what he said. So you could easily deduce from counsel's response that the notice of appeal was going to be bare bones as a way to buy time. And you didn't need to wait until the petitioner got out of detention. You didn't need to wait to go over the record with him. In fact, he says in his declaration, and this is on page 48 and 49, he says in his declaration, apparently the record was forwarded to my lawyer's office, which she was able to review. He didn't need to review it with her. And yet she's claiming in her brief that she needed to go over it with him and that she needed to wait for the record. And she says she got the record in December of 2006. Pacer says the Ninth Circuit received the record in October 31, 2006. Either way, her motion wasn't filed until February 5, 2007. Months later, when she specifically wrote to counsel and her letter dated August 1, 2006, we have received, quote, the entire file for the petitioner. Review of the file, it appears that you have failed to submit the brief, thereby prejudicing the petitioner's interest in having his appeal dismissed. She recognized he was prejudiced. The arguments weren't raised. The flaws, if any, in the adverse credibility finding were not raised to the board. She knew that. There was no appeal brief filed. She wrote to opposing counsel, and then she waited six months or more to file a motion to reopen. And that was why the board denied this motion to reopen for ineffective assistance. Well, if you think the issue before us is the ineffectiveness of this counsel, I assume, again, whenever you keep saying she, you're talking about the lawyer over on that other table. Is that who you're talking about? Yes, opposing counsel in this case. Well, if that's what we have, I don't know that this case can adequately be argued, because the lawyer over there has a conflict. If that's the question, whether she's ineffective, then if that's what you're saying. Are you? Is it? I don't know. Because you keep saying she all the time, and I don't know who you're talking about. I'm sorry. The lawyer who was responsible for contacting the attorney initially in this August 1, 2006 letter says Jehan Thomas and Associates, and it's signed by Jehan Thomas. Okay? This is a letter dated August 1, 2006 that she received the entire file. Okay? Who is she? Jehan Thomas. I assume that that's Jehan Thomas. Am I saying it right? Is that her? I don't know whether it's her or she. Okay. I assume that it's a she, because I spoke with someone on the phone last week. So you are saying that the lawyer over there who was arguing this case is the one who was guilty of the failures. Our position is that she didn't file in a diligent manner to get reopening. Okay. Then don't we need another counsel to be arguing this case and explaining or defending the position of counsel today? It seems to me there's somewhat of a conflict. If the issue that you're asking us to resolve is whether counsel over here was ineffective, we ought to have a neutral counsel here to be able to discuss that issue. Well, the court can review the record and the evidence and determine without them. We don't need lawyers at all. I mean, we don't need you if we can get a review of the record and the evidence. It's all in the record. Everything I'm saying is in the record. All right. Well, your time is well over. Yes. I appreciate the time. Thank you. Thank you, Your Honor. Your Honor, may I just be heard on this petition? This is not correct. The board abused its discretion completely in just not giving way to all the evidence attachment to the motion to reopen. They just put a weight on an August 1, 2006 letter addressed to former counsel telling him that we've received the entire file and that you failed to file a brief. However, they failed completely to pay or give way to any response from former counsel indicating that the brief was optional and that he has clearly and fully stated the reasons of his appeal on the notice. And that's at Administrative 58-59. The board further ignored and did not give way to any evidence declaration from myself and from petitioner that we relied completely on former counsel representation that he has fully and clearly presented and presented all the notice on the appeal. And most importantly, Your Honor, the administrative record became available to me, yes, on paper on October, but it only became available to me when this court noticed the briefing schedule at the end of November in December 2005. The notice of appeal was included. Former counsel has never forwarded for me the notice of appeal, so I had no idea as to what he has written. I just relied on his response to my letter indicating that he has fully and clearly stated the reasons for the appeal on the notice. And that's available at Administrative Record 58-59. Contrary to the board, the motion was not filed as a result of former counsel failure to file a brief, a knowledge that was available to me as of August 1, 2006. The motion was filed based on ineffective assistance of the former counsel as a result of his deficiency to file the notice of appeal, a knowledge that became available to me in December 2006 when the notice of the appeal was received as part of the administrative record. As a matter of fact, the notice of the appeal confirmed the lies of the former counsel to myself and to petitioner. He has fully represented petitioner. And this honorable court even reviews the record and shows that the attachment to the motion to reopen of the notice of the appeal was obtained from the administrative record as evident by the stamp up there. But you would agree, and I'm just trying to bring this quickly to a head. You would agree that there was, on August 25, 2006, a reissued final order of removal, giving your client then another opportunity to do what had to be done. That is correct. And you will agree that after August 25, 2006, that then, from then until February 5, 2007, when the motion to reopen was finally filed, that's the timeline we're really looking at as to whether we should have filed a motion to reopen prior to February 5, 2007. You'd agree with that. That's correct. And just a minute. And just a minute. And you'd agree that during that period of time, you were counsel. That is correct. But when does the knowledge of me get imputed over the effectiveness of the former counsel? Well, I understand. But Judge Reinhart's questions are really then, at that point, we're really talking about your own conduct and what you could or could not have done. And so that's all I'm trying to do is get in the record at the appropriate time. That is correct. But, Your Honor, the knowledge of the former counsel in effectiveness became available to me in December of 2006 when I got the record and I realized that the Notice of Appeal was not fully prepared as he represented to me on his August 5, 2006, letter. I relied completely on his letter where he indicated to me that the brief was optional and that he has fully and clearly indicated all the errors of the immigration judge on the Notice of Appeal. Well, that's not the problem. The problem is whether you had time for a motion to reopen and there was no notice filed in a timely manner. Now, that's why I suggested that instead of you defending your own performance, if we're going to be litigating your performance, that maybe there ought to be a neutral counsel to either say you were ineffective or you weren't, not you. Maybe. I have no idea about it. There is an issue about whether you were ineffective, which I'm not sure you are the best person to be arguing. But we may not ever reach that question here. All right. Thank you very much. Thank you. The case just argued will be submitted. Next case on the calendar is Pestano v. Holden.
judges: Nelson D. W., Reinhardt, Smith N. R.